[920 NE2d 348, 892 NYS2d 292]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN HENDERSON, Appellant.

Argued October 21, 2009; decided November 23, 2009

## APPEARANCES OF COUNSEL

*Office of the Appellate Defender*, New York City (*Richard M. Greenberg* and *Eunice C. Lee* of counsel), and *Simpson Thacher & Bartlett LLP* (*Marsha W. Yee* of counsel) for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Rither Alabre, Joseph N. Ferdenzi* and *Karen Swiger* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed.

This appeal stems from a fight at the Anna M. Kross Center at Rikers Island Jail, after which defendant Brian Henderson was charged with attempted assault in the first degree (Penal Law §§ 110.00, 120.10) and other crimes. At trial, the People placed defendant at the center of the fight, while the defense argued that defendant was not even present when the fight broke out.

Two correction officers testified that, at about 9:30 P.M. on March 17, 2003, a noisy disturbance in the day room of the housing unit where they were working attracted their attention. One correction officer saw defendant throw over a table on which another inmate was sitting, and both officers saw defendant in a fight with this inmate-victim. According to one of the officers, defendant pulled out a metallic object from his left shirt sleeve and attacked the inmate-victim, throwing punches and delivering sudden jabs to his body; the other officer saw blood on the inmate-victim's shirt.

The officers activated their personal body alarms, devices that electronically summon assistance, and ordered the inmates to stop fighting. When defendant walked over to the shower area, across from the day room, one of the correction officers fol-

lowed. This officer saw defendant place an object down one of the drains before returning to the day room. After the combatants were removed to their cells, a nine-inch shank with a point and a sharpened edge was retrieved from the drain. The inmate-victim was taken to the prison clinic for treatment of his injuries, consisting of multiple 2-centimeter by 10-millimeter deep puncture wounds to the left shoulder and arm, a 3-centimeter laceration between the third and fourth fingers of his left hand, and multiple small stab wounds and lacerations. Defendant presented an alternative version of what happened through the inmate-victim's testimony. The inmate-victim stated that, while correction officers were giving "options" (meaning they had opened the cell doors and were allowing inmates to retrieve personal items), he was sitting on a table in the day room. He claimed to have gotten into a fight with a "Spanish brother" over the use of a telephone; eventually, several inmates joined the fray. He testified that defendant was a friend, not among his assailants (whom he described as three to four Hispanic males, about 20 to 25 years old), and, indeed, did not even enter the day room until after the fight was over.

On cross-examination, the prosecutor pursued several lines of inquiry designed to cast doubt on the inmate-victim's credibility. She brought to light that the inmate-victim first accused the "Spanish brother" at trial, but that soon after the attack, he signed a handwritten statement asserting "I don't know what happened. I don't know who did this." She elicited testimony that he served fellow inmates with their meals individually three times daily, from which the jury might infer that he was very familiar with his fellow inmates and therefore always likely to have been able to identify his assailant. Moreover, the inmate-victim acknowledged that he had been incarcerated in a holding cell with defendant the previous week, after which he spoke to defense counsel for the first time. The prosecutor then asked him "What do inmates . . . in a cell call an individual who is a victim in a case and he comes to court and testifies against another inmate?" This provoked the inmate-victim to insist that he had not been intimidated by defendant. He bragged that he had been in many fights, had assaulted staff, and could take care of himself.

The jury convicted defendant of attempted assault in the first degree and did not consider the other crimes charged. After an unsuccessful motion pursuant to CPL 330.30 to set aside the verdict, defendant was sentenced as a mandatory persistent vio-

lent felony offender to a term of 16 years to life imprisonment. Defendant then moved pursuant to CPL 440.10 to vacate the judgment of conviction and sentence. Supreme Court issued an order denying the motion, and the Appellate Division granted defendant permission to appeal the order, which was consolidated with his direct appeal. The Appellate Division subsequently affirmed both the judgment and the order, with one justice dissenting on one of several claimed trial errors; specifically, that the prosecutor's cross-examination of the inmate-victim and remarks made during summation improperly suggested that he was lying because he had been intimidated by defendant. The dissenting justice granted defendant leave to appeal, and we now affirm.

The prosecutor's questions on cross-examination reasonably attacked the inmate-victim's truthfulness and explored motives for his testimony clearing defendant of participation in the fight, including intimidation or fear of reprisal. The inmate-victim's contact with defendant at a time when he decided to testify for the defense was relevant in this regard. Further, the prosecutor's summation comments were a fair response to defense counsel's closing argument, in which he asked, "Why in a room full of inmates, did not one inmate come forward to say that [defendant] had anything to do with this?" The prosecutor legitimately suggested possibilities other than defendant's innocence; namely, the prospect of retaliation ("[s]nitches get stitches"), or adherence to a code of silence.

Defendant's remaining arguments, to the extent preserved, are without merit.

Chief Judge Lippman and Judges Ciparick, Graffeo, Read, Smith, Pigott and Jones concur.

Order affirmed in a memorandum.